UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| DARRELL R. MACNAB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 4:04cv79AS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM, ORDER & OPINION**

Plaintiff, Darrell R. MacNab, seeks judicial review of the denial of his claim for Social Security Benefits. The Commissioner of Social Security found Mr. MacNab not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Mr. McNab applied for a period of disability and disability insurance benefits (DIB), claiming disability beginning September 17, 1997, due to post-traumatic stress disorder (Tr. 264). His applications were denied initially and on reconsideration (Tr. 214, 220). An ALJ issued a decision on April 25, 2000, finding Plaintiff was not disabled (Tr. 227-41). The Appeals Council granted a request for review, vacated the ALJ's decision, and remanded the case for further proceedings (Tr. 256-59). On August 29, 2002, the ALJ issued a decision finding that Plaintiff was not disabled under the Act (Tr. 18-60). The ALJ found that Plaintiff was disabled when all of his impairments were considered (Tr. 59). But the ALJ also found that, if Plaintiff would stop using alcohol, he would have the residual functional capacity (RFC) for work at all exertional levels, limited to simple, repetitive tasks with no more than occasional contact with

the public (Tr. 59). Based on the RFC, the ALJ found Plaintiff could not do his past work (Tr. 60). However, the ALJ found that, absent alcohol use Plaintiff would be able to perform a significant number of other jobs, including the unskilled medium exertion jobs of assembler, packer, and janitor (Tr. 60).

The Appeals Council's denial of review left the ALJ's decision as the Commissioner's final decision in this case (Tr. 10). Mr. MacNab timely filed a complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## I. Statement of Facts

Mr. MacNab was 54 years old ("closely approaching advanced age") on his alleged disability onset date of September 17, 1997. *See* 20 C.F.R. § 404.1563. He was 58 years old ("advanced age") on December 31, 2001, when he was last insured for DIB (Tr. 288-89). *Id*. He has a college degree and he has worked as a farm manager, salesman, business consultant, insurance salesman, and a field inspector (Tr. 294, 203-06).

A.     Medical Evidence

Mr. MacNab served in the Marine Corps from 1964 to 1968. J.A. Bowman, M.D., performed a psychiatric evaluation on September 23, 1997 (Tr. 325-26). Plaintiff told Dr. Bowman that, during his Marine service in Vietnam, he was under bombardment and mortar attack and saw people getting killed, but he was not engaged in hand-to-hand combat (Tr. 325). After returning to the U.S., he was withdrawn, sullen, and isolated. After his divorce, he began using alcohol to help him fall asleep (Tr. 325). He had taken Prozac for depression in the past, and he was seeing a therapist for post-traumatic stress disorder (PTSD) (Tr. 325). Dr. Bowman diagnosed PTSD, assigned a global assessment of function (GAF) of 60 to 65.

Gilbert Anderson, Ed.D., saw Plaintiff for five sessions from September 17, 1997 through November 24, 1997 (Tr. 329-30). He stated that Plaintiff was struggling with PTSD, depression, low self-image, and career difficulties (Tr. 329). Plaintiff was using Prozac, but still looked strained and stressed (Tr. 33).

According to VA records from October 9, 1997, Plaintiff drank two or more alcoholic beverages every evening (Tr. 544). Plaintiff reported to a social worker at the VA that he was feeling depressed, having difficulty sleeping, having intrusive thoughts about Vietnam, being hypervigilant (Tr. 400). He also stated that he was taking care of his mother, he had a close relationship with his sisters, and he saw his son daily (Tr. 400-01). He again stated that he had two drinks at night to help him sleep (Tr. 401). Plaintiff could perform activities of daily living, and he had no suicidal or homicidal ideation (Tr. 401). He was diagnosed with PTSD and referred to a PTSD therapy group (Tr. 402).

Another social worker, Paul E. Moore, MSSW, noted that Plaintiff consumed three drinks of gin every night to help him sleep (Tr. 399). Mr. Moore opined that Plaintiff was probably addicted to alcohol, and he noted that Plaintiff admitted to "substantially more" than three drinks a night at times (Tr. 399).

Plaintiff continued his therapy (Tr. 339-45, 347-52, 354-66, 369-97, 432-34). He was seen by a psychiatrist, Dr. Randall C. Jordan, M.D. Dr. Jordan noted that he was pleased with the benefits of Prozac.

On February 11, 1998, MMPI-2 testing (personality testing) yielded conflicting results which Dr. Steven Herman, Ph.D, found "somewhat concerning" (Tr. 380). Dr. Herman concluded that the results were consistent with a diagnosis of PTSD, but not with a substance

3

abuse diagnosis (Tr. 380). Dr. Herman diagnosed PTSD, major depression, and compensatory schizoid features (Tr. 380-381).

J. Knable, M.D., evaluated Plaintiff on May 14, 1998 (Tr. 516-20). Dr. Knable diagnosed PTSD and major depressive disorder, both in partial remission, and assigned Plaintiff a GAF of 65 (Tr. 519). He opined that Plaintiff was moderately impaired in both occupational and social areas and had an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (Tr. 519-20). He stated that these symptoms would occasionally impair occupational and social events (Tr. 520).

On January 1, 1998, Plaintiff was awarded VA benefits, based on 30% disability due to PTSD (Tr. 545-48).

In an August 12, 1998 letter, Dr. Anderson opined that Plaintiff would likely be unable to maintain regular employment (Tr. 328). He wrote that Plaintiff appeared to function reasonably well, but he was extremely paranoid, avoided public contacts, had difficulty walking in a mall without fearing attack, and had difficulty maintaining dependable work (Tr. 328).

On September 10, 1998, pscyhologist David H. Gover, Ed.D., performed a mental status examination (Tr. 331). Plaintiff stated that he had always used alchol to "medicate his feelings" (Tr. 331). His activities included watching C-Span on television, watering flowers, feeding birds, pulling weeds, mowing the grass, vacuuming, doing laundry, cooking meals in the microwave, going to the library, reading, and playing bagpipes (Tr. 332-33). He stated that he tried to force himself to get out of the house (Tr. 332). His therapy group was his only social activity and the only comfortable setting outside his home (Tr. 333). Dr. Gover assigned a GAF of 60 and diagnosed PTSD with depression and anxiety, alcohol dependence in partial remission,

and socially avoidant personality disorder (Tr. 333).  He opined that Plaintiff did not have good concentration but could attend to simple, repetitive tasks for a two-hour period, had good persistence, cooperation, and ability to relate, and had a bit slower than average work pace (Tr. 333).  He also noted that Plaintiff could manage funds if his drinking stayed at a low level (Tr. 334).

On September 18, 1998, state agency psychologist R. Klion, Ph.D., reviewed the evidence and opined that Plaintiff could complete simple chores and tasks (Tr. 337).

On May 25, 1999, Mr. Moore completed a questionnaire, signed by Dr. Herman, indicating that Plaintiff had PTSD, major depression, and compensatory schizoid features, with a current GAF of 65, and a highest GAF of 79 over the past year (Tr. 549).  Mr. Moore stated that when near an anniversary of combat losses or during a time of stress, Plaintiff would have limited ability to perform within a schedule, maintain regular attendance and punctuality, and work for eight hours (Tr. 551).

Plaintiff continued with his group therapy and reported benefits from taking Klonopin (Tr. 422, 928, 980).

During a mental status evaluation on January 29, 2000, Plaintiff complained of daily intrusive thoughts about the war, as well as an anxious mood, avoidance, detachment, anhedonia, decreased concentration, increased hypervigilance, increased startle response, and decreased memory (Tr. 917).  He stated that he was unhappy with Dr. Jordan's treatment (Tr. 918).  Shaun Wood, the examiner, noted that Plaintiff's thoughts were logical with no suicidal or homicidal ideations or delusions, and that he had moderately decreased attention and concentration (Tr. 918).  Mr. Wood diagnosed PTSD and alcohol abuse and assigned a GAF of 45 (Tr. 918).  Mr.

5

Wood noted that Plaintiff drank about four bears two or three times a week, and admitted to past social problems related to heavier drinking (Tr. 917). He opined that Plaintiff had a "severe degree of impairment in his ability to maintain meaningful and personal relations and pursue gainful employment as a result of his PTSD symptoms" (Tr. 918). He also noted, "At this time, he has no impairment due to alcohol abuse problems" (Tr. 918).

On July 31, 2000, Plaintiff reported feeling depressed and that he "recently broke sobriety" (Tr. 846). Dr. Herman noted a week later that Plaintiff "was apparently drinking again this weekend" (Tr. 841).

On January 29, 2001, psychiatrist Yvette Baker, M.D., noted that Plaintiff's behavior was somewhat intense and his mood was depressed, but he was cooperative, his thought process was logical and relevant, his insight and judgment were fair, he had good immediate, recent, and remote memory, and he had no suicidal or homicidal ideation (Tr. 789). Plaintiff was having sleep problems and hypervigilance, but no Vietnam flashbacks (Tr. 789). Dr. Baker increased Plaintiff's Prozac dosage on February 20, 2001 (Tr. 782). A week later, Dr. Herman commented that Plaintiff was "stabilizing" (Tr. 780). Plaintiff indicated that he was a non-drinker (Tr. 779).

In July 2001, Plaintiff reported that he drank one or two drinks a day and had been feeling depressed and helpless over the past month (Tr. 726). Rawah Jabi, M.D., performed a psychiatric examination on Plaintiff on July 14, 2001 (Tr. 720-23). Plaintiff complained of intrusive thoughts, nightmares, flashbacks, memory problems, feeling detached from others, angry outbursts, decreased concentration, depressed mood, and increased vigilance (Tr. 720). Plaintiff stated that he drank alcohol, but did not have a drinking problem (Tr. 721-22). He admitted to suicidal ideation four or five months prior, but not currently (Tr. 721). Dr. Jabi

diagnosed PTSD and alcohol dependency and assigned a GAF of 40.  Dr. Jabi stated that Plaintiff had a "moderate impairment in his ability to seek employment or to function" (Tr. 722).  Dr. Jabi also stated that Plaintiff's symptoms were related to PTSD and alcohol dependency impaired his ability to be functional in different areas, including marriage, employment, and self-care (Tr. 722).

On August 6, 2001, Dr. Rauscher stated that there were no behavioral problems or health problems with alcohol use, but Plaintiff's habit of two to four drinks a day was beyond the limit of potential benefit to risk (Tr. 710).

On April 30, 2002, Michael J. Gratton, Ph.D., one of Plaintiff's group therapy leaders, wrote that Plaintiff was chronically depressed and emotionally somewhat fragile (Tr. 588).  Dr. Gratton stated that Plaintiff was "very significantly impaired due to symptoms of PTSD" (Tr. 588).  Dr. Gratton stated that Plaintiff's GAF was no more than 45.  He also stated:

> This veteran's alcohol abuse is still an active problem.  But this does not explain away his PTSD.  Sure we would all like to see him quit drinking . . . altogether.  On the other hand, I have never seen him under the influence of alcohol here, nor smelled alcohol on his breath, nor noticed any other sign that he has come here on the heels of drinking.  Furthermore, I have called Scott at home on a number of occasions, to discuss treatment scheduling and issues.  Notably he is always home when I call, and never seems to be under the influence of alcohol.

(Tr. 588).

Clinical psychologist David G. Jarmon, Ph.D., performed psychological testing on May 14, 2002 (Tr. 441-44).  Plaintiff reported flashbacks and bad dreams (Tr. 442).  Dr. Jarmon stated that Plaintiff's MMPI-2 testing profile was of "marginal validity" and suggested deliberate exaggeration and difficulty coping with stress (Tr. 443).  Dr. Jarmon diagnosed PTSD, delayed onset; depressive disorder not otherwise specified; and schizoid personality characteristics (Tr.

7

444).  He assigned Plaintiff a GAF of 60 (Tr. 444).  He also opined that Plaintiff had good ability to follow work rules, use judgment, maintain personal appearance, and understand, remember, and carry out simple job instructions; but poor ability to deal with work stresses; and fair ability for all other work-related mental activities (Tr. 446-47).

In a letter dated November 8, 2002, Dr. Gratton wrote that Plaintiff was highly anxious and abused alcohol (Tr. 1014).  He stated, however, that Plaintiff "would have disabling symptoms with PTSD even if he stopped drinking altogether" (Tr. 1014).

B.      Hearing Testimony

Mr. MacNab testified at the August 10, 1999 hearing.  He testified that he had used gin to "self-medicate" for about 30 years (Tr. 80).  He stated that he currently drank "a few beers now and then," and that he stopped frequent drinking in 1997 (Tr. 80-81).

Plaintiff testified that he stopped selling insurance in May or June of 1998, (Tr. 81-82) and he had not renewed his license because he did not think he could pass the test (Tr. 106).  Plaintiff owned and maintained five vending machines that he serviced early in the morning when few people were present.  He also stated that he had been in an altercation with a neighbor who slammed a door, which startled him (Tr. 112).  As a result, he was convicted of two misdemeanors (Tr. 113).  He stated that Prozac and Klonopin were helpful in alleviating his symptoms (Tr. 115).  He still awoke at night, but he was able to go back to sleep (Tr. 115).

Dr. Georgiann Pitcher, who reviewed the evidence and heard Plaintiff's testimony, opined that Plaintiff's impairments, alone or in combination, did not meet any impairment in Social Security's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 (Listings) (Tr. 123).

At a later hearing held before another ALJ on August 1, 2002, Plaintiff testified about the

requirements of his past jobs (Tr. 141-47).  He still owned and maintained four vending machines, and stocked the machines, made repairs, and collected the proceeds when few peopler were present (Tr. 147-49).

Plaintiff told the ALJ that, five or six years before the hearing, he started to be bothered by crowds and startled by sudden noises (Tr. 153).  He avoided people and going places where he might be startled (Tr. 155).  He stated that he went to the VA two or three times a week for group meetings (Tr. 157).

Plaintiff testified that he did not go into stores, except for the grocery store where he maintained a vending machine (Tr. 157).  He occasionally ate at Burger King during low traffic hours, but he generally ate his meals at home (Tr. 157).  He stated that he cleaned, vacuumed, washed dishes, and did yard work (Tr. 157-58).  He also stated that he kept an appointment calendar and tried to plan his activities so he would not be in a situation that would make him angry (Tr. 160, 162).

Plaintiff told the ALJ that he used to drink excessively and that he used to drink a few drinks every evening.  He also stated that he currently only drank a couple of beers a day because his medication was not as effective when he drank (Tr. 159).

Psychologist Jack E. Thomas testified after reviewing the evidence and hearing Plaintiff's testimony (Tr. 164-202, 206).  He stated that, from September 17, 1997 on, Plaintiff had PTSD, alcohol dependency, and avoidant personality disorder (Tr. 165).  Dr. Thomas testified about the various psychological test results and concluded that they reflected an exaggerated profile, suggesting admission to greater psychological pathology than Plaintiff actually had (Tr. 167-70). Dr. Thomas discussed possible reasons for exaggerated profile and opined that it was likely due

9

to an attempt to get further attention or give the impression of greater psychological pathology for personal benefit (Tr. 179-80).  He concluded that the clinical notes supported a GAF of 60 due to PTSD and 40 when substance abuse was added (Tr. 181-82, 201).

Dr. Thomas testified that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace, and no extended episodes of decompensation (Tr. 185).

He further testified that when alcohol abuse was omitted from consideration, the levels of social functioning and decompensation would be unchanged, but Plaintiff would have only mild restriction of activities of daily living and moderate difficulties with concentration, persistence, and pace (Tr. 187, 206).  Absent substance abuse, Plaintiff's abilities to perform work-related mental activities were generally "fair," except that Plaintiff would have "poor" ability to deal with the public and to understand, remember and carry out complex job instructions and "good" ability to understand, remember and carry out simple job instructions (Tr. 188-90).  Dr. Thomas concluded that Plaintiff should be limited to simple repetitive tasks with no more than occasional contact with the general public (Tr. 190, 206, 449-51).  He stated that the limitations found by Mr. Moore and Dr. Herman were not supported by objective evidence, including their own reports and GAF ratings (Tr. 191-93).

Finally, vocational expert Stephanie Archer testified that, while a hypothetical person aged 53 to 58 with Plaintiff's educational and work experience who had no work-related physical limitations and the work-related mental limitations stated by Dr. Thomas could not do Plaintiff's past jobs, (Tr. 207-08) that hypothetical person could perform other jobs.  These included the medium exertional jobs of assembler (4,500 jobs in Indiana), packer (3,800 jobs in Indiana), and

janitor (12,000 jobs in Indiana) (Tr. 208-09).

## II.  Standard of Review

This court's review of the Commissioner's decision is a limited one.  Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence.  *Griffith v. Callahan,* 138 F.3d 1150, 1152 (7th Cir. 1998).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971).  In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Griffith* 138 F.3d at 1152;  *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997).  That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffith* 138 F.3d at 1152.  The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id*.;  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## III. Discussion

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act."  *Estok v. Apfel*, 152 F.3d 636, 638 (7th.Cir.1998).  Under

11

section 423(c)(1)(B)(1), it is well established that to receive benefits, a disability must have begun or had its inception during the period of insured status.  *Bastian v. Schweiker*, 712 F.2d 1278, 1280 (8th Cir. 1983);  *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert.denied*, 444 U.S. 952 (1979).  The Seventh Circuit has established that a claimant has the burden of establishing that he is disabled within the meaning of the Social Security Act on or before the date his insured status expired.  *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998); *Meredith v. Bowen*, 833 F.2d 659 (7th Cir.1987); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir.1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds,* 445 F.2d at 39.  Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F.Supp. 651, 654 (N.D. Ind.1982).  Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured.  *Jeralds,* 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir.1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled.  As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

>(1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford* 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford* 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford* 227 F.3d at 868. The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

The ALJ found that, when the effects of all of the Plaintiff's impairments, including his alcohol dependency, were considered, Plaintiff met the requirements of Sections 12.06, 12.08, and 12.09 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 (Listings). Thus, when all of the Plaintiff's impairments were considered, Plaintiff was disabled.

Under the Act, however, a claimant is not entitled to DIB if alcoholism or drug addiction would be a contributing factor material to the disability finding. 42 U.S.C. § 423(d)(2)(3). A claimant is not disabled under the Act, and therefore not entitled to DIB, if he would be found disabled if he were to stop using alcohol and drugs. 20 C.F.R. § 404.1535. Therefore, the ALJ was required to determine whether Plaintiff would still be disabled if he stopped using alcohol. *See Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999)("To determine whether alcoholism or drug addiction is a contributing factor material to a determination of disability, the Social Security Administration considers whether the claimant would be found to be disabled if his alcohol or drug use stopped.") (citing 20 C.F.R. § 404.1535, 416.935). The ALJ's legal determination was correct. Therefore, the fundamental question is whether the ALJ's

13

determination – that, absent alcohol use, Plaintiff would be able to do a significant number of jobs in the economy (Tr. 60) – is supported by substantial evidence.  *See  Griffith*, 138 F.3d  at 1152.  A review of the record as a whole demonstrates that it was.

The medical sources in the record consistently assigned lower GAF scores on reports that included the diagnosis of alcohol abuse and higher GAF scores on reports that did not include such a diagnosis.  While the correlation was not perfect – Dr. Gatton opined that Plaintiff would be disabled even without alcohol abuse and assigned a GAF of 45 (Tr. 588), for example – it was more than consistent enough to "build an accurate and logical bridge between the evidence and the result." *Shramek*, 226 F.3d at 809.

Dr. Gatton, for instance, acknowledged that Plaintiff's alcohol abuse was "still an active problem" (Tr. 588).  Additionally, although Mr. Moore and Dr. Herman found "significant limitations." they did not diagnose alcohol abuse (Tr. 549-54).  Moreover, this Court's review must be based on the record as a whole, and the ALJ was required to weigh the evidence from all the medical sources.  When read together, these statements and the evidence in the record as a whole justify giving more weight to Dr. Thomas's opinion.

Furthermore, the Plaintiff made several inconsistent statements about his alcohol use.  This supports the ALJ's finding that Plaintiff was not entirely credible (Tr. 57-58).  As noted above, the Court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *See Griffith,* 138 F.3d at 1152; *Herron*, 19 F.3d at 333.  The ALJ's credibility finding was justified and will not be disturbed by the Court.

Finally, Plaintiff did not challenge the ALJ's finding that a person of Plaintiff's age,

14

education, work history, and the RFC found by the ALJ could perform a significant number of jobs.  Therefore, the Court need not review that determination.  *See Griffith*, 138 F.3d at 1154.

### IV.  Conclusion

Based on the forgoing, the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**


Date: March 31, 2006                                          **S/ ALLEN SHARP**
                                                              **ALLEN SHARP, JUDGE**
                                                              **UNITED STATES DISTRICT COURT**